# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STEPHEN HALL, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-5020 |
| MICHAEL RAECH, JEFFREY GIANNINI, | : | |
| CITY OF COATESVILLE POLICE DEPARTMENT, and | : | |
| VALLEY TOWNSHIP POLICE DEPARTMENT, | : | |
| Defendants. | : | |

## Memorandum and Order

YOHN, J.                                                      March 25, 2009

Plaintiff brings this civil rights action against defendants Michael Raech, Jeffrey

Giannini, City of Coatesville Police Department ("Coatesville"), and Valley Township Police

Department ("Valley Township").[1]  Presently before the court are a motion to dismiss Counts I,

III, V, VII, IX, and plaintiff's punitive damages demand filed by Raech and Coatesville (Doc.

No. 10) and a motion to dismiss counts II, IV, VI, X, and plaintiff's punitive damages demand

filed by Giannini and Valley Township (Doc. No. 8).  Both motions seek dismissal pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action upon which relief

may be granted.  For the reasons that follow, I will grant in part and deny in part defendants'

motions.

---

[1] Though the caption names their respective police departments as defendants, Valley Township and the City of Coatesville are properly alleged as the defendants in the substantive allegations of the Complaint.  The parties may want to stipulate to amend the caption.

I.     **Factual and Procedural Background**

Hall makes the following allegations in his Complaint, which the court must accept as true for purposes of a motion to dismiss.  Hall suffers from type I diabetes, a condition that due to its severity requires Hall to travel with an insulin pump at all times.  (Compl. ¶ 9.)  On July 21, 2007, Hall attended his son's birthday party.  (*Id.* ¶ 10.)  Prior to departing in his vehicle, Hall tested his blood sugar level and found that it was within a healthy range.  (*Id.* ¶ 11.)  Soon after Hall left the party, however, he experienced a sudden diabetic episode, commonly known as insulin shock.  (*Id.* ¶ 12.)  The diabetic episode caused confusion, blurred vision, and minor trembling.  (*Id.* ¶ 13.)  As he approached his home, Hall abruptly turned his vehicle around.  (*Id.* ¶ 14.)  During this maneuver, Hall backed his vehicle into a telephone pole.  (*Id.*)  Hall then drove two blocks past his home.  (*Id.*)  At this time, Hall stopped the vehicle and drank a soft drink in an effort to stabilize his blood sugar levels.  (*Id.*)

A local resident witnessed Hall back into the telephone pole and called Coatesville to report the incident.  (*Id.* ¶ 15.)  Coatesville dispatched Raech to the scene and requested assistance from Valley Township, which dispatched Giannini.  (*Id.* ¶ 16.)  When the officers arrived they found Hall sitting in his parked vehicle.  (*Id.* ¶ 17.)  Giannini approached Hall and asked that he turn off and exit the vehicle.  (*Id.* ¶ 18.)  Though he had already removed the key from the vehicle's ignition, Hall stated that he did not have the key.  (*Id.*)  Hall also attempted to explain that he was suffering from a diabetic episode, for which he had a medical bag with blood testing equipment and glucose gel packs on the passenger seat.  (*Id.* ¶¶ 20, 22.)  Hall also had a large medical alert decal attached to his vehicle's windshield.  (*Id.* ¶ 21.)  Despite Hall's explanation, visible medical bag, and medical alert decal, the officers pulled Hall from his

vehicle, jumped on his back, punched and kicked his ribs, legs, and stomach, violently pulled his arms behind him, and placed Hall in handcuffs.  (*Id.* ¶¶ 23-25.)  Once detained, the officers forced Hall to sit on the side of the road.  (*Id.* ¶ 25.)  During this time, Hall asked the officers if he could test his blood sugar levels with the medical equipment sitting in plain view on his front seat.  (*Id.* ¶ 27.)  After approximately eight to ten minutes, Raech located the medical equipment in Hall's vehicle and called for an ambulance.  (*Id.* ¶ 26.)  When the paramedics arrived, Hall was treated for both his low blood sugar and for the wounds inflicted by the officers when they pulled Hall from his vehicle.  (*Id.* ¶ 28.)  After Hall's blood sugar stabilized, the paramedics left. (*Id.* ¶ 29.)  The officers also left, without charging Hall.  (*Id.* ¶ 30.)  As a result of this encounter, Hall has suffered severe injuries, which require ongoing treatment.  (*Id.* ¶ 31-32.)

Hall filed his Complaint against defendants on October 22, 2008.  The Complaint asserts ten counts: (I)-(II) unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, §§ 8 and 26 of the Pennsylvania Constitution against Raech and Giannini respectively; (III)-(IV) unreasonable force in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, §§ 8 and 26 of the Pennsylvania Constitution against Raech and Giannini respectively; (V)-(VI) intentional infliction of emotional distress against Raech and Giannini respectively; (VII)-(VIII) assault and battery against Raech and Giannini respectively; and (IX)-(X) failure to train in violation of the Fourteenth Amendment to the United States Constitution and Article 1, § 26 of the Pennsylvania Constitution against Coatesville and Valley Township respectively.  Hall seeks compensatory damages, punitive damages, attorney fees, costs, and interest.

On December 16, 2008, Giannini and Valley Township jointly filed a motion to dismiss

Counts II, IV, VI, X, and Hall's punitive damages demand for failure to state a cause of action

upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  On

December 22, 2008, Raech and Coatesville jointly filed a motion to dismiss Counts I, III, V, VII,

IX, and Hall's punitive damages demand for failure to state a cause of action upon which relief

may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Hall responded to both

motions.

## II.   Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of a complaint.[2]  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  When evaluating a motion

to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's

complaint, and must view any reasonable inferences that may be drawn therefrom in the light

most favorable to the plaintiff.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.

2008); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

The complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  This statement must "'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v.

Twombly*, 127 S. Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

---

[2] In addition to the allegations contained in the complaint, "courts generally consider . . . exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* 1964-65 (citations and alterations omitted).  Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 1965 (citations and footnote omitted); *see also Phillips*, 515 F.3d at 232.

**III.    Discussion[3]**

**A.    Official Capacity**

Plaintiff seeks to recover against Raech and Giannini in both their individual and official capacities.  "Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978), it is appropriate to dismiss the claims against the individual in his official capacity and retain them against the real party in interest.  *See Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)) (reasoning that claims raised against local officials "in their official capacities, are only a duplication of the counts against the Township itself"); *McCachren v. Blacklick Valley Sch. Dist.*, 217 F. Supp. 2d 594, 599 (W.D. Pa. 2002) (dismissing official capacity actions for this reason in case involving claims under the IDEA, the Rehabilitation Act, § 1983, and the Fourteenth Amendment); *Mitros v. Cooke*, 170 F. Supp. 2d 504, 506 (E.D. Pa. 2001) (finding in a case involving a borough police officer that "[w]here a suit is brought against a public officer in his official capacity, the suit is treated as if the suit were brought against the governmental entity" for which the officer works).

---

[3] With a few immaterial exceptions, both motions to dismiss challenge plaintiff's Complaint on the same grounds.  Accordingly, I will address the motions collectively.  I will, of course, identify those situations where the parties' arguments diverge.

I therefore will dismiss all claims against defendants Raech and Giannini in there official capacities and retain those same claims against the real parties in interest, Coatesville and Valley Township.

###### B.        Appropriate Constitutional Standard (Counts II and IV)

Counts II and IV invoke, *inter alia*, the Fourteenth Amendment's substantive due process protections.  Giannini and Valley Township argue that the Fourth Amendment, not the Fourteenth Amendment, supplies the appropriate constitutional framework for Hall's unreasonable seizure and excessive force claims.  Accordingly, Giannini and Valley Township move to dismiss Counts II and IV to the extent that the claims are premised on the Fourteenth Amendment's due process standards.[4]  After review, I agree.

Claims that "law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that Fourth Amendment analysis applied where officers seized diabetic man—who had slipped into insulin shock—during the course of an investigatory traffic stop); *see Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999).  As in *Graham*, this case involves the alleged seizure or investigatory stop or both of a person.  Consequently, the Fourth Amendment provides the appropriate constitutional standard.  Therefore, I will grant Giannini's and Valley Township's motion and dismiss Counts II and IV to the extent that these counts rely on the Fourteenth Amendment.

---

[4] Raech and Coatesville do not present a parallel argument concerning the Fourteenth Amendment in their motion.

C.       Qualified Immunity

In Counts I-VIII, Hall pleaded claims against Raech and Giannini for actions taken in their individual capacities.  Raech and Giannini argue that they are immune from the these claims pursuant to the doctrine of qualified immunity.  Importantly, where a defendant asserts the privilege of qualified immunity the court must address the issue at the earliest stage in the proceedings as possible, as the privilege "'is an immunity from suit rather than a mere defense to liability[.]'" *Saucier v. Elliot*, 533 U.S. 194, 200-01 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Thus, consideration of the qualified immunity issue is not premature at the motion to dismiss stage.[5]

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing, *inter alia*, *Wood v. Strickland*, 420 U.S. 308, 322 (1975)).  The Supreme Court has outlined a two step process for determining whether a defendant is entitled to qualified immunity.[6]  *See Saucier* 533 U.S. at 201-202.  First, the court analyzes whether,

---

[5] Nonetheless, at the motion to dismiss stage, "'qualified immunity will be upheld . . . only when the immunity is established on the face of the complaint,'" *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cit, 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)), as the pleading standard articulated in Rule 8(a) is not compromised merely because a defendant attempts to invoke qualified immunity, *id.* at 295.

[6] Recently, in *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009), the Supreme Court held that the *Saucier* two-step analysis, "while . . . often appropriate, . . . should no longer be regarded as mandatory."  *Pearson* grants lower courts "the discretion to decide whether [the *Saucier*] procedure is worthwhile in particular cases."  *Id.* at 821.  Here, at least at the motion to dismiss stage, I find that the *Saucier* framework aides my evaluation of the sufficiency of plaintiff's Complaint, and I will apply it accordingly.

"[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]"  *Id.* at 201; *see Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007).  Second, if the allegations support a violation of a constitutional right, I will "ask whether the right was clearly established."  *Saucier*, 533 U.S. at 201.  When addressing this second step, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.

To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment," thereby satisfying step one of the *Saucier* approach, "a plaintiff must show that a 'seizure' occured and that it was unreasonable."  *Abraham*, 183 F.3d at 288 (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989); *see also Curley*, 499 F.3d at 206 (reasoning that court must focus on "'the reasonableness of the officer's belief as to the appropriate level of force[,]' which 'should be judged from [the officer's] on-scene perspective,' and not in the '20/20 vision of hindsight'" (quoting *Saucier*, 533 U.S. at 205) (alterations in original)).  Here, Hall asserts that Raech and Giannini pulled him from the vehicle and proceeded to violently kick and handcuff him.  (Compl. ¶¶ 18, 23-26.)  Then, the officers left Hall to wait approximately eight to ten minutes on the curb prior to calling for medical assistance.  (Compl. ¶¶ 25-26.)  Viewed in the light most favorable to Hall for purposes of this motion to dismiss, Hall has pleaded facts that support the existence of a seizure and facts that demonstrate the use of unreasonable force.  *See, e.g.*, *Wilson v. Maxwell*, No. 08-4140, 2008 WL 4056364, at *4 (D.N.J. Aug. 28, 2008) (finding that plaintiff pleaded sufficient facts to support excessive force claim where plaintiff averred that police detectives pulled him from his vehicle, slammed him to the concrete, and punched and kicked him in the face).  Moreover, Hall alleges that the officers ignored his explanation about

8

his medical condition and ignored the medical alert decal and medical equipment resting in plain view.  (Compl. ¶¶ 20-23.)  Again, viewing these allegations in the light most favorable to Hall for purposes of this motion to dismiss, these allegations support a finding that reasonable officers would have realized that Hall was suffering from a medical condition and therefore known that seizing Hall in the alleged fashion constituted an unreasonable seizure.  Therefore, Hall has pleaded facts sufficient to state a claim under § 1983 for a violation of his Fourth Amendment rights, which were clearly established at the time.  Accordingly, I will deny defendant's motion to dismiss the counts against the officers in their individual capacities on the basis of qualified immunity.[7]

> ### D.  *Monell* Claim (Counts IX and X)

Defendants seek dismissal of plaintiff's *Monell* claims (counts IX and X).[8]  Plaintiff asserts that he has pleaded facts sufficient to support a *Monell* claim based on Coatesville's and Valley Township's alleged failure to adequately train their police officers.  I agree with plaintiff.

In *Monell*, the Supreme Court held that "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue.  *Respondeat superior* or vicarious liability will not attach under § 1983."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).  A municipality is liable under § 1983 only when the

---

[7] Raech's only argument in support of his motion to dismiss Count VII (assault and battery) is qualified immunity, which does not apply to Hall's assault and battery claim.  I will deny the motion with respect to Count VII accordingly.

[8] Raech and Coatesville offer no reasoning to support their motion with respect to the *Monell* claim.  Instead, Raech and Coatesville simply articulate the *Monell* standard and conclude that Hall has not pleaded facts sufficient to establish a *Monell* claim.  On the other hand, Giannini and Valley Township focus less on the sufficiency of Hall's pleadings and more on the merits of the case, even though the factual merits are not at issue.

"execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (quoting *Monell*, 436 U.S. at 694).

"Municipal liability can be predicated upon a failure to train." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (citing *City of Canton*, 489 U.S. 378, 388 (1989)). A municipal will be liable for constitutional deprivations arising out of inadequate training only where the failure to train "amounts to 'deliberate indifference to the constitutional rights of persons with whom the police come in contact.'" *Id.* (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1028 (3d Cir. 1991) (quoting *City of Canton*, 489 U.S. at 388)).[9] Moreover, "a plaintiff asserting a failure to train theory is 'required to prove that the deficiency in training actually caused the constitutional violation[.]'" *Id.* at 325 (quoting *City of Canton*, 489 U.S. at 391) (alterations omitted).

Here, Hall satisfies the first element of a failure to train theory by identifying a training deficiency, specifically that defendants failed "to train . . . officers to distinguish between criminal activity and medical emergencies." (Compl. ¶¶ 115, 125.) Hall supports his failure to train theory by further averring that Coatesville and Valley Township "should have been aware" of the need for the training, because "prior events" evidenced such a need. (*Id.* ¶¶ 116, 126.)

---

[9] In *City of Canton*, the Supreme Court explained the reason for recognizing a failure to train theory under *Monell*:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

489 U.S. at 390.

The need for training is especially important with diabetes, Hall explains, because "[t]he suffering of a diabetic episode is a usual and recurring situation police officers must deal with." (*Id.* ¶¶ 117, 127.)  Finally, Hall's averments satisfy the causation element of a *Monell* claim, as Hall asserts that the failure to adequately train officers "resulted" in the violation of his constitutional rights, and that such a failure "amounts to a deliberate indifference."  (*Id.* ¶¶ 119, 129.)  Assuming these assertions to be true, as I must when considering this motion to dismiss, Hall has pleaded facts sufficient to establish the elements of a *Monell* claim.  Therefore, I will deny defendants' motions to dismiss Counts IX and X.[10]

### E.    Pennsylvania Constitutional Claims

In Counts I-IV, IX and X, Hall asserts claims against defendants pursuant to Article 1, §§ 8 and 26 of the Pennsylvania Constitution.[11]  Defendants argue to dismiss Hall's state constitutional claims because no private cause of action for monetary damages exists under the Pennsylvania Constitution.  Plaintiff asserts that defendants have not engaged in the appropriate analysis to determine whether such a private cause of action does exist in this unsettled area of *state* constitutional law.

---

[10] Whether Hall will be able to support these allegations at trial is, of course, a different matter.

[11] Section 8 provides:
The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Section 26 provides:
Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

11

The Pennsylvania Supreme Court has not determined whether a private cause of action for monetary damages is cognizable under the Pennsylvania Constitution.   In *Jones v. City of Philadelphia*, however, the Pennsylvania Commonwealth Court held that § 8 did not embody a private cause of action for monetary damages in an excessive force case.  890 A.2d 1188, 1216 (Pa. Cmmw. Ct. 2006).  Since *Jones*, federal courts addressing this issue with respect to § 8 have followed *Jones* and held that no private cause of action exists.[12]  I too find *Jones* persuasive and will adopt it accordingly.[13]  Thus, I will grant defendant's motion to dismiss plaintiff's § 8 claims.

Although the *Jones* court held that no private cause of action exists under § 8, the *Jones* court implied that such a cause of action could exist under other provisions of the Pennsylvania Constitution.  *Id.* at 1193, 1216; *see also Aquino v. County of Monroe*, 05-2468, 2007 WL 1544980, at *6 (E.D. Pa. May 24, 2007) (discussing private cause of action under § 26 and reasoning that "at least where the state constitutional provision affords rights greater than those existing under the federal constitution" *Jones* "suggests the possibility that a claim for damages

---

[12] *Bowers v. City of Philadelphia*, No. 06-3229, 2008 WL 5210256, at * 8 (E.D. Pa. Dec. 12, 2008) (relying on *Jones* for broader proposition that no section of the Pennsylvania Constitution permits any cause of action for monetary damages); *Stockham Interests, LLC v. Borough of Morrisville*, No. 08-3431, 2008 WL 4889023, at *10 (E.D. Pa. Nov. 12, 2008) (same); *Acquino v. County of Monroe*, No. 05-2468, 2007 WL 1544980, at *6 (M.D. Pa. May 24, 2007) (acknowledging that while *Jones* may not apply to other provisions of Pennsylvania Constitution, application of *Jones* to § 8 claims is appropriate); *K.S. v. School Dist. of Philadelphia*, No. 05-4916, 2007 WL 1009815, at * 7 (E.D. Pa. March 28, 2007) (adopting *Jones* court's reasoning); *Small v. City of Philadelphia*, No. 05-5291, 2007 WL 674629, at *12 (E.D. Pa. Feb. 26 2007) (applying *Jones* and dismissing § 8 claim).

[13] Hall correctly asserts a plaintiff can pursue injunctive and declaratory relief under the Pennsylvania Constitution.  *See Jones*, 890 A.2d at 1212 n.37.  Hall, however, does not seek either injunctive or declaratory relief.  Therefore, Hall's argument is moot.

for a violation of a provision of the Pennsylvania Constitution may indeed be recognized"). *But see Stockham Interests, LLC v. Borough of Morrisville*, 08-3431, 2008 WL 4889023, at *10 (E.D. Pa. Nov. 12, 2008) (holding, in broad terms, that there "is no private cause of action for damages arising from violations of the Pennsylvania Constitution").  As the Pennsylvania Supreme Court has yet to address this issue, *see Aquino*, 2007 WL 1544980 at *2, to determine whether such a cause of action exists, the court would have to conduct an extensive inquiry into an unsettled area of state constitutional law, *see Jones*, 890 A.2d at 1195-15.   Because this an inquiry would "raise[] a novel or complex issue of State law," I decline to exercise supplemental jurisdiction over plaintiff's § 26 claims pursuant to 28 U.S.C. § 1367(c)(1).[14]  *See Trump Hotels & Casino Resorts v. Mirage Resorts*, 140 F.3d 478, 487 (3d Cir. 1998) ("A court may decline to exercise supplemental jurisdiction over a state law claim where 'the claim raises a novel or complex issue of state law.'"); *see also Laughman v. Pennsylvania*, No. 05-1033, 2006 U.S. Dist. LEXIS 15841, at *26 (M.D. Pa. Mar. 17, 2006) (declining supplemental jurisdiction because "the Pennsylvania Supreme Court has not yet addressed the issue of whether a plaintiff may seek monetary damages for state constitutional violations" and citing cases doing the same).  I will dismiss plaintiff's § 26 claims accordingly.

### F.     Intentional Infliction of Emotional Distress (Counts V and VI)

In Counts V and VI, Hall asserts claims against Raech and Giannini for intentional infliction of emotional distress.  Giannini argues that Hall has failed to plead facts that

---

[14] Section 1367(c)(1) provides: "(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State law, . . . ."

demonstrate he received medical treatment for his emotional distress as required by Pennsylvania law.  Raech echoes this argument and also argues that Hall has not pleaded facts sufficient to establish outrageous conduct, as is necessary under Pennsylvania law.

To state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must plead facts that demonstrate: "(1) the conduct of the defendant was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was severe."[15] *Walker v. North Wales Borough*, 395 F. Supp. 2d 219, 232 (E.D. Pa. 2005) (citing *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979)).  "The tort of intentional infliction of emotional distress requires a showing that the defendants acted in a manner 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.'" *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005) (quoting Restatement (Second) of Torts § 46); *see also Toney v. Chester County Hosp.*, 961 A.2d 192, 201-02 (Pa. Super. Ct. 2008) (quoting *Reardon v. Allegheny Coll.*, 926 A.2d 477, 488 (Pa. Super. Ct. 2007)). In addition, "at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987).

Here, Hall alleges that after the officers pulled him from his vehicle and violently assaulted him, the officers denied him "rightful access to treatment of his condition."  (Compl. ¶¶ 23-25, 88.)  As a result, Hall has suffered severe distress including "sleeplessness, headaches,

---

[15] Although the Pennsylvania Supreme Court has not formally adopted the tort of intentional infliction of emotional distress, the Third Circuit has predicted that it will.  *See Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273-74 (3d Cir.1979).

14

anxiety, and embarrassment." (*Id.* ¶ 90.)  Moreover, Hall alleges that the officers knew or should have known that Hall was suffering from insulin shock and that the officers nevertheless ignored Hall's pleas for medical relief.  (*Id.* ¶¶ 21-23, 88, 90.)  Assuming these facts to be true and drawing all reasonable inferences in favor of Hall as I must, these allegations support a finding that the officers actions were "intentional or reckless" and "outrageous," thereby satisfying the first two elements.  Hall further alleges that the officers' actions resulted in physical injury for which Hall received treatment when the ambulance arrived, (*id.* ¶ 28-29), that he has received ongoing treatment for the injuries, (*id.* ¶¶ 31-32), and that he has experienced severe emotional distress, including "sleeplessness, headaches, anxiety, and embarrassment," (*id.* ¶¶ 91, 98).  Assuming these averments to be true, as I must, plaintiff has pleaded facts sufficient to demonstrate the remaining elements of an intentional infliction of emotional distress claim.[16]  Therefore, because plaintiff has pleaded facts sufficient to state a claim for intentional infliction of emotional distress, I will deny defendants' motions to dismiss Counts V and VI.  Plaintiff will, however, eventually need to support this claim with competent medical evidence of the alleged emotional distress.

---

[16] Defendants argue that plaintiff's intentional infliction of emotional distress claims must fail because plaintiff has not pleaded facts or attached documents that demonstrate competent medical evidence exists to support plaintiff's claim.  Without deciding whether plaintiff needs to plead facts about his medical treatment, *see Johnson v. City of Chester*, 10 F. Supp. 2d 482, 491 (E.D. Pa. 1998) (noting split over whether plaintiff must plead existence of competent medical evidence or whether plaintiff merely must use competent medical evidence to prove elements of claim), I find that plaintiff has sufficiently averred the existence of medical documentation via reasonable inference, (Compl. ¶¶ 28-29, 31-32, 98.)  While plaintiff has not attached "competent medical evidence" to the Complaint, the court will have ample opportunity to determine the sufficiency of Hall's medical evidence at a later date.  *See Kokinda v. Breiner*, 557 F. Supp. 2d 581, 595 (M.D. Pa. 2008) (addressing defendant's 12(b)(6) motion to dismiss intentional infliction of emotional distress claim and reasoning that "the sufficiency of Plaintiff's medical evidence may be considered at a later stage of litigation").

G.    **Punitive Damages**

Plaintiff seeks at least $100,000 in punitive damages from defendants for all alleged

counts, including Counts IX and X against Valley Township and Coatesville.[17]  Defendants argue

that the court should dismiss plaintiff's punitive damages demand, because municipalities are not

liable for punitive damages under § 1983.

Indeed, municipalities are "immune from punitive damages under 42 U.S.C. § 1983."

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Therefore, I will grant

defendants' motions to dismiss plaintiff's demand for punitive damages to the extent that the

demand includes recovery from Coatesville and Valley Township under Counts IX and X

(*Monell* claims).  I will not, however, dismiss the entire demand for punitive damages because

punitive damages are recoverable in individual capacity suits against state actors for "reckless or

callous disregard for the plaintiff's rights, as well as intentional violations of federal law," *Smith*

*v. Wade*, 461 U.S. 30, 51 (1983), and in an intentional infliction of emotional distress case, where

the defendant acts "'with a bad motive or with a reckless indifference to the interests of others,'"

*Woodson v. AMF Leisureland Ctrs., Inc.*, 842 F.2d 699, 703 (3d Cir. 1988) (quoting *Chambers v.*

*Montgomery*, 192 A.2d 355, 358 (Pa. 1963)).

IV.   **Conclusion**

In sum, I will grant in part and deny in part defendants' motions.  First, I will grant both

defendants' motions to dismiss: (1) Counts I-VIII to the extent that the counts plead an official

capacity suit against Raech and Giannini; (2) Counts I-IV and IX-X to the extent that these

counts raise claims under § 8 of the Pennsylvania Constitution; and (3) plaintiff's demand for

---

[17] The punitive damages demand is not count specific.

16

punitive damages against Valley Township and Coatesville.  I will also grant Valley Township's

and Giannini's motion to dismiss Counts II and IV to the extent that these counts purport to plead

a claim under the Fourteenth Amendment.  Finally, I will decline to exercise supplemental

jurisdiction over plaintiff's § 26 claims in Counts I-IV and IX-X and will dismiss these claims

accordingly.  I will deny the balance of defendants' motions.

       An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STEPHEN HALL, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-5020 |
| MICHAEL RAECH, JEFFREY GIANNINI, | : | |
| CITY OF COATESVILLE POLICE DEPARTMENT, and | : | |
| VALLEY TOWNSHIP POLICE DEPARTMENT, | : | |
| Defendants. | : | |
| | : | |

## Order

**AND NOW** this 25th day of March 2009, upon consideration of defendants' motions to dismiss (Doc. Nos. 8 & 10) and plaintiff's responses thereto, defendants' motions are granted in part and denied in part, and **IT IS HEREBY ORDERED** that:

1. Counts I-VIII against Raech and Giannini in their official capacities are **DISMISSED** with prejudice.

2. Plaintiff's state constitutional claims pursuant to Art. 1, § 8, contained in Counts I-IV, are **DISMISSED** with prejudice. Plaintiff's state constitutional claims pursuant to Art. 1, § 26, contained in Counts I-IV and IX-X, are **DISMISSED** without prejudice.

3. Plaintiff's Fourteenth Amendment claims against Giannini and Valley Township, contained in Counts II and IV, are **DISMISSED** with prejudice.

4. Plaintiff's punitive damages demand is **DISMISSED** with respect to recovery under Counts IX and X from Valley Township and Coatesville.

5. The balance of defendants' motions is **DENIED**.

s/ William H. Yohn Jr., Judge
William H. Yohn Jr., Judge